IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

ELKE TRACY,                           )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   Case No. 06-3448-CV-S-REL
                                      )
CASEY'S GENERAL STORE, INC.,          )
                                      )
            Defendant.                )

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the court is defendant's motion for summary judgment
on the grounds that (1) plaintiff lacks direct evidence of
discrimination, and (2) plaintiff cannot establish a prima facie
case of discrimination because she cannot show that she was
performing her job at a level that met defendant's legitimate
expectations at the time of her termination, and because she
cannot show facts adequate to permit an inference of
discrimination. In her response, plaintiff argues that she has
presented direct evidence of discrimination, plaintiff can
establish that she was performing her job satisfactorily, and
plaintiff can establish that defendant's proffered reasons for
terminating plaintiff have no basis in fact.

I find that there is no direct evidence of discrimination;
that plaintiff cannot establish a prima facie case of
discrimination because she cannot establish that she was replaced
with someone outside the protected class or that similarly-
situated employees outside the protected class were treated more

favorably than she was; and that defendant has articulated a legitimate, non-discriminatory reason for discharging plaintiff, and plaintiff is unable to establish that the articulated reason is false or is a pretext for intentional discrimination. Therefore, defendant's motion for summary judgment will be granted.

## I.   BACKGROUND

On November 7, 2006, plaintiff filed a complaint against defendant alleging she was terminated from employment with defendant due to her national origin, German.

On November 1, 2007, defendant filed a motion for summary judgment (document number 23).  On December 21, 2007, plaintiff filed a response to defendant's motion for summary judgment (document number 26).  On January 17, 2008, defendant filed a reply (document number 30).

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether there exists a genuine issue of material

Case 6:06-cv-03448-REL   Document 31   Filed 01/30/08   Page 2 of 32

fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if:  (1) there is a

dispute of fact; (2) the disputed fact is material to the outcome

of the case; and (3) the dispute is genuine, that is, a

reasonable jury could return a verdict for either party.

American Academy of Family Physicians v. United States, 75

A.F.T.R.2d 95-1709 (W.D. Mo. 1995), aff'd 91 F.3d 1155 (8th Cir.

1996).  The party moving for summary judgment has the burden of

proving that these requirements for summary judgment have been

met.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

     In a summary judgment analysis, a court must first consider

whether there are any issues of fact.  If the only issues are

issues of law, then summary judgment is appropriate.  Disesa v.

St. Louis Community College, 79 F.3d 92, 94 (8th Cir. 1996).  If

issues of fact are raised, a court must consider whether these

issues are material to the outcome of the case.  Materiality is

identified by the substantive law that is to be applied.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  Factual

disputes that are collateral to the substantive law will not

preclude summary judgment.  Id.

     In addition to the requirement that a dispute of fact be

material, the dispute must also be genuine.  A dispute of fact is

considered genuine if the non-moving party has produced

sufficient evidence such that a reasonable jury could return a

3

verdict for that party.  <u>Id</u>. at 249.  When considering a motion

for summary judgment, the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in its

favor.  <u>Id</u>. at 255.  If the evidence submitted by the non-moving

party is merely colorable or is not significantly probative, then

summary judgment may be granted.  <u>Id</u>. at 249-250.

Where the party moving for summary judgment does not bear

the burden of proof at trial, that party must show "that there is

an absence of evidence to support the non-moving party's case."

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  This burden

is met when the moving party identifies portions of the record

demonstrating an absence of a genuine issue of material fact.

<u>Id</u>. at 323.  If the moving party meets the requirement, the

burden shifts to the non-moving party who must set forth specific

facts showing that there is a genuine issue for trial.  <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 474 U.S. at 248.  The trial judge then

determines whether a trial is needed -- "whether, in other words,

there are any genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be

resolved in favor of either party."  <u>Id</u>. at 250.

### III. _UNCONTROVERTED FACTS_

Below, typed in bold, are the facts I find to be uncon-

troverted by the record before me.  Any uncontroverted facts

4

without citations to the record are not controverted by the plaintiff in her response.

D1. Casey's is an equal opportunity employer whose policy prohibits any form of unlawful discrimination, including national origin discrimination.

D2. To ensure its equal employment opportunity commitment, Casey's disseminates its policies to all employees, including -- in this instance -- to Plaintiff and to Robert Madura and Donita Branstetter, the supervisors plaintiff implicates in her national origin discrimination claim.

D3. Through Casey's EEO policy, plaintiff was aware of the various avenues available to her to complain about any issues she thought contravened Casey's policies.

D4. Casey's stores include the following employees: store manager, assistant store manager, and hourly employees.

D5. At Casey's, store managers report to an area supervisor, who in turn reports to a district manager.

D6. At all times relevant to this lawsuit, Robert Madura was the area supervisor and Donita Branstetter was the district manager for the stores in which plaintiff worked.

D7. Plaintiff began working for Casey's as a clerk on or about September 8, 2004.

5

D8.  On November 7, 2004, area supervisor Robert Madura promoted plaintiff to assistant store manager.

D9.  On July 3, 2005, area supervisor Robert Madura recommended that Casey's promote plaintiff to store manager, which recommendation district manager Donita Branstetter approved.

D10. When she approved the promotion of plaintiff to store manager, Ms. Branstetter knew plaintiff was German.

D11. Robert Madura, Donita Branstetter, and Helena Snow -- the person who replaced plaintiff -- are all of German descent themselves.

D12. After plaintiff became store manager, she received written reprimands for the following:

    a.   Leaving the store several times before 2:00, her scheduled time to leave, without approval or communicating with Mr. Madura (reprimand dated November 14, 2005)

    b.   Failing to ensure two employees were on duty for a closing shift (reprimand dated November 25, 2005)

    c.   Failing to work her scheduled shifts on November 28, 2005, and November 29, 2005, without approval or requesting the days off from Mr. Madura, as required (written reprimand and 3-day suspension without pay, November 30, 2005).

**d.** Failing to complete production planner entries for four days, failing to check red jacket reports for three days, failing to front face cooler and store, and failing to enter two-day-old invoices before leaving the store on December 15, 2005 (written termination notice December 15, 2005).

Plaintiff admitted having left the store before the end of her shift, but stated that she had obtained permission from Mr. Madura; she admitted there were not two employees at the store but said that she had not been notified by the employees and prepared a written reprimand of the employee alone at the store; plaintiff admitted having missed work on November 28 and 29, 2005, but stated that she called Mr. Madura on his personal cell phone instead of his work cell phone.

Although plaintiff controverted the proposed fact as originally written by defendant (i.e., that plaintiff left the store early without approval, failed to ensure two employees were on duty, did not report to work for two days without approval), the proposed fact has been amended to reflect that plaintiff was disciplined for these infractions, not merely that she exhibited these performance and attendance issues. Specifically, the original proposed fact stated that plaintiff left early without approval; however, her testimony, cited by both parties, was that

7

she did indeed have prior approval to leave her shift early if she was in pain from her knee surgery.

**D13. As a result of the "no call/no show" incident in late November, Casey's considered terminating -- and under its policies could have terminated -- plaintiff's employment.**

Plaintiff objects to this proposed fact, citing her own deposition testimony wherein she stated that she called Mr. Madura on his home cell phone instead of on his work cell phone. However, the no call/no show incident occurred in November, and the evidence establishes that plaintiff did not inform Mr. Madura that she had called on his personal cell phone number until December 5. Therefore, this evidence does not controvert the fact that Casey's considered terminating plaintiff after she failed to report to work or properly notify anyone on November 28 and 29.

**D14. Rather than take that step, however, Mr. Madura and Ms. Branstetter jointly agreed to give plaintiff a "last chance" to perform.**

Plaintiff objects to this proposed fact. All of the evidence cited by defendant, including paragraph 10 of Bob Madura's affidavit, supports this proposed fact. Plaintiff cites only to Mr. Madura's entire affidavit without indicating how this affidavit contradicts the proposed fact. I find that it does not.

8

**D15. In so doing, Mr. Madura clearly communicated to plaintiff that any further performance or attendance issues would result in the termination of her employment.**

Plaintiff objects to this proposed fact, but the deposition pages she cites do not deal with whether she was warned any further violations would result in her termination.

**D16. Just ten days later, Mr. Madura returned to plaintiff's store to find her gone and her work incomplete.**

Defendant cites to Mr. Madura's affidavit. Plaintiff, in objecting to this proposed fact, cites to the deposition of Helena Snow (plaintiff's replacement) and plaintiff, both of whom indicated that Mr. Madura came to the store early in the morning and terminated plaintiff, who was at the store. However, this proposed fact does not state that Mr. Madura came to the store to terminate plaintiff. It merely states that he came to the store and found plaintiff gone and found her work undone. Plaintiff's citations to the record do not dispute this fact.

**D17. As a result, Casey's -- through Mr. Madura and Ms. Branstetter -- terminated plaintiff's employment.**

Plaintiff objects to this proposed fact, although I must assume it is because the fact begins with "As a result". Because fact number 16 above is undisputed, that combined with the undisputed fact that plaintiff was terminated makes this fact undisputed.

Case 6:06-cv-03448-REL   Document 31   Filed 01/30/08   Page 9 of 32

**D18. Casey's -- specifically Mr. Madura -- has terminated at least one other store manager for similar conduct/misconduct.**

Plaintiff objects to this proposed fact.  However, the evidence cited (depositions of Helena Snow and plaintiff) do not address this fact, and there is no indication that either would be competent to testify about this.

Defendant actually proposed the fact that Mr. Madura has terminated other "non-German store managers".  However, his affidavit states that he terminated Jenny Smith.  There is no allegation anywhere in the record that Jenny Smith is not German.

**D19. Plaintiff claims Casey's terminated her employment because of her national origin (German).**

**D20. In so doing, plaintiff claims it was Ms. Branstetter, not Mr. Madura, who was biased against her because of her national origin.**

Plaintiff objects to this proposed fact; however, plaintiff testified in her deposition that she is alleging that the actions Mr. Madura took were directed by Ms. Branstetter.  She was further asked, "[A]re you accusing through your allegation Mr. Madura of having discriminated against you on the basis of your German ancestry?"  Answer:  "Not really, no."

**D21. In support of her claim, plaintiff claims employees in her store referred to her management as the "German way" and claims that one employee in the store (Rhonda Widel) overheard**

10

another employee in the store (Helena Snow) tell yet another employee in the store (DeAnna Whitney) that Ms. Branstetter had previously said something to the effect of "that German b---h is not supposed to run an American store."

D22. As to plaintiff's complaint that employees in her store referred to her management as the "German way," plaintiff agrees that -- as the store manager -- it was her responsibility in the first instance to discipline those employees if she believed their references were inappropriate, which she never did.

D23. As to the "German b---h" allegation:

      a.   Ms. Branstetter denies making the statement;

      b.   Ms. Snow denies having heard it or telling Ms. Whitney she heard it;

      c.   Ms. Whitney denies that Ms. Snow told her she heard it;

      d.   Ms. Widel denies having overheard it and claims any indication otherwise is a mistake.

D24. As to plaintiff's complaint about Ms. Branstetter's alleged comment, plaintiff admits she never heard the alleged comment directly and, in fact, was not aware of the alleged comment until <u>after</u> Casey's terminated her employment.

Below are additional uncontested facts proposed by plaintiff. Any uncontroverted facts without citations to the

11

record are not controverted by the defendant in its reply.

P1.  Plaintiff was born in Germany and moved to the United States on July 14, 2003, after marrying Mike Tracy, who was then (and still is) in the United States Army.

P2.  Plaintiff was originally hired as a clerk.  She worked her way up to the position of assistant manager and manager.

P3.  Margie Williams has worked as a manger for defendant since February 15, 1999.

P4.  Margie Williams hired plaintiff as a clerk.

P5.  Margie Williams testified that plaintiff worked very well under her, that she was a hard worker, showed up on time and left on time.

P6.  When an assistant manager position came open at Margie Williams's store, she asked plaintiff to try out for it because she felt like plaintiff would be a good assistant manager. Margie Williams testified that she watched the employees to see how well they interact with everyone else, including the customers, and how well they do their job.  Margie felt plaintiff was confident, a hard worker and deserved to become an assistant manager, so she recommended plaintiff as her choice to her supervisor, Robert Madura.

P7.  As an assistant manager, plaintiff worked with Ms. Williams for several months and during that time performed very

well.  She showed upon on time, left on time, entered pertinent documents and information appropriately and Ms. Williams thought plaintiff was a very good worker.

P8.   When Ms. Williams left the Lebanon No. 2 store to take over a new store at Osage Beach, she spoke with Robert Madura about whom she thought would be a good candidate for the position of manager.  Ms. Williams recommended plaintiff based upon her work with her since 2004.

P9.   When plaintiff worked with Ms. Williams, she did a good job assisting in helping to keep the store clean, make sure products were front facing and if she had to miss a day of work, only did so if she requested it or if she was sick and called before the shift began.

P10. Ms. Williams had no hesitation at all in recommending plaintiff for the job as manager after working with her as assistant manager.

P11. While Helena Snow was working as Assistant Manager in the Lebanon No. 2 Store, it was kept clean, in good shape and products were maintained in the front facing position.

P12. In the opinion of Rhonda Widel, one of plaintiff's employees, plaintiff was always diligent in making sure the accounting was done correctly, the store was clean, jobs completed and the customers were happy.

13

P13. While employed as a manager at Casey's plaintiff was told by Della Hulsey and customers of Casey's that plaintiff's co-workers were saying that Helena Snow would be given the Casey's store before Christmas.

This proposed fact is not based on any admissible evidence as required by F. R. Civ. P. 56.

**P14. In response to these comments, plaintiff had asked Robert Madura about the issue.**

**P15. While plaintiff was employed as manager of Casey's[1], Helena Snow would comment to plaintiff that the way she acted or ran the store must be a German thing or the German way. These comments became more frequent as time went on and plaintiff told the employees her behavior had nothing to do with being German and that they should not say that because it was not right.**

P16. Helena Snow would refer to plaintiff as that "German bitch" when she discussed the plan to remove plaintiff from her job; often made fun of plaintiff behind her back and ridiculed her for being German; would harshly tell plaintiff not to speak in German if plaintiff used a German word or counted in German; would frequently say, "I'm not German – I'm an American"; shortly before plaintiff's termination, Ms. Snow tore up a written

---

[1] I assume plaintiff meant that while <u>she</u> was employed as manager these things occurred. The way the proposed fact is written, it refers to Helena Snow as manager.

14

warning plaintiff had issued in front of other employees; and said (along with Ms. Snow, Ms. Whitney and Pauline Hoban) they could not believe plaintiff could expect to have her position as a manager when she was not an American.

The evidence cited by plaintiff is inadmissible hearsay. In addition, the proposed fact is confusing as it appears to be listing things that Helena Snow did or said; however, it concludes with (along with Ms. Snow. . .). It is unclear whom this proposed fact is discussing.

**P17. After plaintiff complained to Robert Madura about Helena Snow's comments about plaintiff being German and Snow's failure to do her job, he said the situation was not easy. Plaintiff told Mr. Madura that if Ms. Snow was not working, plaintiff could not work with that and so she may need to replace Ms. Snow. Mr. Madura commented that was not so easy. Mr. Madura failed to respond to plaintiff's complaint about employees saying her behavior must be the "German way."**

Defendant disputes this fact; however, the testimony cited by defendant does not address this specific proposed fact. The testimony cited by defendant establishes that Mr. Madura told plaintiff it was not true that Helena Snow would have the store by Christmas.

P18. Between September and December 2005, Casey's employee Amanda Adams told plaintiff that Helena Snow was doing things

15

behind her back to make her look incompetent, like refusing to clean or make sure items are front faced, putting documents in folders as requested.

This is inadmissible hearsay because it is established through plaintiff's testimony, i.e., plaintiff is testifying about statements made by Amanda Adams offered to prove the truth of those statements.

**P19. Rhonda Widel observed Helena Snow tear up a write up that plaintiff had given her approximately one week before plaintiff was terminated.**

Defendant contests this as immaterial and irrelevant. Although it may be, it is still undisputed.

**P20. After plaintiff returned from medical leave in October 2005, she spoke with Robert Madura about her need to take medical leave because of pain she was still suffering. Mr. Madura explained that if plaintiff left only 30 minutes to one hour before her shift was scheduled to end, it would be OK for her to leave and if she left for a half day or more, she was to call him.**

**P21. Robert Madura asked Helena Snow to make a list of times that other people had to come in and cover when plaintiff left. Ms. Snow listed whoever clocked in before his or her shift**

16

**actually started, assuming that anyone who came in early was coming in to cover for plaintiff.**

This proposed fact, as originally written, was disputed by defendant as not supported by the evidence cited. The proposed fact has been rewritten to conform to the testimony cited by plaintiff in support.

**P22. When Ms. Snow prepared the list of times, she assumed plaintiff had left the store early. Ms. Snow did not ask any employee other than "Pauline" whether plaintiff had left early on the date that the employee clocked in early.**

Defendant disputed this proposed fact as originally written without the reference to Pauline.

**P23. When plaintiff received her Corrective Action Statement dated November 14, 2005, she asked Mr. Madura why he had waited nearly a month from the date of the alleged infraction and talked to him about the fact that he had given her permission to leave an hour before the end of her shift without calling him.**

Defendant disputes this fact as irrelevant and refers to Exhibit 9 indicating plaintiff had left two hours early. Exhibit 9 is a Corrective Action Statement issued to Jenny Smith. The Corrective Action Statement issued to plaintiff is Exhibit 8, and does reflect that plaintiff left two hours early. However, this does not call into doubt the fact proposed by plaintiff.

17

P24. When plaintiff was given the Corrective Action
Statement dated November 25, 2005, she was criticized for not
having two persons close the store, but explained to Mr. Madura
that two people were assigned to close the store and that she did
not receive a phone call from the employee closing the store or
the employee who failed to close and was unaware the store was
short staffed.

Defendant objects to this fact as irrelevant.  However, even
though it may be irrelevant, defendant must cite evidence to show
that it is in dispute.  This has not been done; therefore, the
fact is undisputed.

P25. When plaintiff was issued a Corrective Actions
Statement dated November 30, 2005, criticizing her for failing to
call Robert Madura when she was absent November 28th and 29th,
plaintiff signed the written warning and accepted a three day
suspension without pay.  However, plaintiff did call Mr. Madura
to inform him of her absence, although she does not remember
whether she actually spoke to him or even if she left him a
voicemail, but called him on his private cell phone instead of
his company cell phone and was reprimanded for this reason.

Defendant objects to this fact as irrelevant because
plaintiff admitted she was not to notify Mr. Madura of absences
on his personal cell phone.  I find that the deposition testimony

18

cited by plaintiff does not accurately support this fact as
originally written, i.e., that plaintiff notified Mr. Madura that
she would be absent.  Plaintiff testified she called Mr. Madura's
personal cell phone number but does not remember whether she
spoke to him, and does not remember whether she even left him a
message.

**P26. Helena Snow said that Robert Madura contacted her and
asked her to come in and cover the register the next day because
Mr. Madura needed to talk to plaintiff.**

Plaintiff originally proposed the fact beginning with "The
day before plaintiff was terminated Robert Madura contacted
Helena Snow . . ."  However, Helena Snow was not present when
plaintiff was terminated; therefore, she is not competent to
testify as to when that occurred.  Helena Snow did not testify as
to the date this contact with Mr. Madura occurred.

**P27. Ms. Snow arrived at the store at 7:30 a.m. on the day
Mr. Madura had asked her to come in and cover the register.
Plaintiff was at the store.  Ms. Snow remained at the register
while Mr. Madura spoke with plaintiff, but Ms. Snow does not know
what Mr. Madura and plaintiff talked about.  Mr. Madura told Ms.
Snow that plaintiff was no longer employed with Casey's.**

This proposed fact that been amended to conform with the
evidence cited in support.

P28. On December 15, 2005, Donita Branstetter was aware that plaintiff was German.

P29. Plaintiff testified that when Robert Madura terminated her employment, the explanation and reason given was that she was not in the job with her heart anymore.

P30. According to Helena Snow, if an employee leaves the evening shift early or does not show up, it is important that employees contact the manager because if they fail to do so, the manager would not know to take any action in having the shift covered by another employee.

P31. Within a week of plaintiff's termination, Robert Madura presented plaintiff with a bonus check he called "awesome" and said no one at the store had ever received a bonus check as big.[2]

## IV. *DIRECT EVIDENCE OF DISCRIMINATION*

To be entitled to direct evidence analysis, the plaintiff must present "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's

---

[2]I point out here that plaintiff cited to deposition pages that she did not provide in her response exhibits. However, those pages are included in plaintiff's deposition testimony attached to defendant's motion, although that deposition was not marked by defendant with an exhibit number as directed.

decision." Rivers-Frison v. Southeast Missouri Community Treatment Center, 133 F.3d 616, 619 (8th Cir. 1998), quoting Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993). Not every prejudiced remark made at work supports an inference of illegal employment discrimination. Rivers-Frison, 133 F.3d at 619. The Eighth Circuit has carefully distinguished between "[c]omments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions," from "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.'" Rivers-Frison, 133 F.3d at 619, quoting Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277-278 (1989) (O'Connor, J., concurring)).

In this case, plaintiff claims in her deposition that Donita Branstetter was the person who made the decision to terminate her employment, and that the decision was based on plaintiff's national origin. There is no allegation anywhere in the record that Donita Branstetter was responsible for any statements or conduct which could be viewed as direct evidence of discrimination. Additionally, plaintiff has pointed to no statements or conduct on the part of any of plaintiff's superiors that could be considered direct evidence of discrimination.

21

The only comments plaintiff has alleged (which are
inadmissible hearsay) came from plaintiff's subordinates, not
plaintiff's superiors. Plaintiff's subordinates were not in any
way responsible for Casey's decision to terminate plaintiff's
employment.

Plaintiff argues that the following constitutes direct
evidence of discrimination:

(1) Prior to being placed under direct supervision of
Robert Madura and Donita Branstetter, plaintiff's job performance
was considered exemplary.

(2) Rhonda Widel heard Helena Snow tell Deanne Whitney that
Donita Branstetter said Helena Snow would be the manager by the
end of the year, and plaintiff was only given the position to
avoid the appearance of discrimination and that by doing things
this way nobody could figure it out.

(3) Helena Snow referred to plaintiff as a German bitch and
made fun of plaintiff for being German.

None of this amounts to direct evidence of discrimination:

(1) At the time plaintiff's job performance was considered
exemplary, she was still an employee of Robert Madura and Donita
Branstetter, but Margie Williams was plaintiff's direct
supervisor and reported to Robert Madura who reported to Donita
Branstetter. Furthermore, it is irrelevant whether plaintiff's
job performance was exemplary while she was a clerk and an

assistant manager.  The evidence establishes that plaintiff was reprimanded on multiple occasions for conduct while she was the store manager, not while she was an assistant manager.

(2)  The statements by Rhonda Widel, and even the statements of Helena Snow that Ms. Widel supposedly overheard, are inadmissible hearsay.  Plaintiff argues these statements are not hearsay because many of them (without identifying which) "are not offered for their truth, and other statements are admissible as the admissions of a party opponent, as evidence of the declarant's state of mind, and evidence of the declarant's intent."

The only reason these statements would be relevant at all to this case is to prove that Ms. Branstetter intended to terminate plaintiff due to her national origin.  Therefore, if they are not offered to prove the truth of the matter asserted, then they are completely irrelevant.  They are not admissions of a party opponent, because they purport to be statements of Helena Snow, who was plaintiff's subordinate.  To the extent they purport to be statements of Donita Branstetter, they are double hearsay, i.e., Rhonda Widel stating that she heard Helena Snow say that she heard Donita Branstetter make these statements.

Plaintiff argues that these statements "made by Ms. Branstetter" are not hearsay.  However, these are <u>not</u> statements made by Ms. Branstetter.  They are statements made by Rhonda

Widel. Rhonda Widel cannot even testify that she heard Donita Branstetter make these statements, because she did not. There is absolutely no indicia of reliability and these statements would not be admissible at trial under any circumstances offered by plaintiff in her brief.

Plaintiff cites <u>EEOC v. HBE Corp</u>, 135 F.3d 543 (8th Cir. 1998), as controlling authority for the proposition that these statements are admissible as admissions of a party opponent under Federal Rule of Evidence 801(d)(2)(D). Plaintiff's reliance on that case is mistaken. In that case, the discriminatory statements were made by the managers directly to the person testifying; and when the person testified at trial, no one objected to the testimony as hearsay. Therefore, the Court of Appeals held that the objection had been waived. The discussion that the testimony was not hearsay is dicta, and it is completely different from the testimony in this case. In <u>HBE Corp.</u> there was no testimony that the witness heard <u>someone else say she heard</u> a manager make a discriminatory statement. In this case, one of plaintiff's subordinates stated that she heard another of plaintiff's subordinates tell yet another of plaintiff's subordinates that a manager said she was going to discriminate against plaintiff. <u>HBE Corp.</u> is inapposite.

Plaintiff also argues that these statements are admissible pursuant to Federal Rule of Evidence 803(3) as evidence of Helena

24

Snow's "then existing state of mind". However, plaintiff uses these statements to argue Ms. Branstetter's state of mind, not Ms. Snow's. And Ms. Snow's state of mind is completely irrelevant as she was plaintiff's subordinate and not responsible for the decision to terminate plaintiff's employment.

Finally, plaintiff argues that management relied on statements made by Ms. Snow who was motivated to tell lies about plaintiff's performance. However, that is not direct evidence of discrimination. Bad business practices do not amount to discrimination. See Moschetti v. Chicago, Cent. & Pacific R. Co., 119 F.3d 707 (8th Cir. 1997) ("issue is not whether explanation was good or bad business reason but whether there was enough evidence to allow reasonable factfinder to infer that intentional discrimination was real reason for discharge"). In other words, if Ms. Snow lied and told management that plaintiff had been absent more than she was, then management fired plaintiff not because she was German, but because they believed plaintiff had been absent too much, even if that belief is based on unsound business practices, i.e., relying on the reports of a jealous subordinate.

(3) Helena Snow's alleged reference to plaintiff as a German bitch is not direct evidence of discrimination because Ms. Snow was plaintiff's subordinate and was not responsible for Casey's decision to terminate plaintiff's employment.

25

## V.  INFERENCE OF DISCRIMINATION

Because there is no direct evidence of national origin discrimination, the burden-shifting scheme developed by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies to this case.  Therefore, plaintiff must first establish a prima facie case of national origin discrimination. Once the prima facie case is established, a legal presumption of unlawful discrimination is created.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).  The burden of production then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action.  If the defendant comes forward with a non-discriminatory explanation, the presumption of unlawful discrimination drops from the case. <u>Id</u>. at 511.  The burden of production then returns to the plaintiff to rebut the defendant's explanation by showing that the proffered reason is actually a pretext for intentional discrimination.  <u>Id</u>. at 508.  The burden of proof remains with the plaintiff at all times.  <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

In order to establish a prima facie case of national origin discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she was terminated; (3) she was qualified for the position; and (4) she was replaced by a person outside a protected class or was treated differently than a similarly

26

situated, non-protected employee. <u>Abdulnour v. Campbell Soup</u> <u>Supply Co., LLC</u>, 502 F.3d 496, 501 (6th Cir. 2007).

I find that plaintiff has failed to establish the fourth prong of the prima facie case, and that the defendant has articulated a legitimate non-discriminatory for the adverse employment action.

*Prima Facie Case*

In order to establish a prima facie case of national origin discrimination based on termination, plaintiff must show either (1) she was replaced by a person outside a protected class, or (2) was treated differently than a similarly situated, non-protected employee. Plaintiff cannot do either.

The undisputed evidence is that plaintiff was replaced with a German female. The undisputed evidence also establishes that the two managers who participated in the decision to terminate plaintiff's employment are German. Plaintiff has offered no legal authority for the proposition that an accent or a place of birth can nullify this requirement for establishing a prima facie case of national origin discrimination, and I have been able to find none.

Additionally, plaintiff has not established that she was treated differently than a similarly situated, non-protected

employee. In fact, plaintiff has never alleged that non-German store managers were treated differently than she was[3].

*Legitimate Non-Discriminatory Reason for Discharge*

Even assuming plaintiff had established a prima facie case of national origin discrimination, I find that defendant has articulated a legitimate non-discriminatory reason for plaintiff's discharge and plaintiff has not rebutted the defendant's explanation by showing that the proffered reason is actually a pretext for intentional discrimination.

The undisputed evidence is that plaintiff was given a written reprimand for leaving the store several times before 2:00, her scheduled time to leave, without approval or communicating with Mr. Madura; failing to ensure two employees were on duty for a closing shift; failing to work her scheduled shifts on November 28, 2005, and November 29, 2005, without approval or requesting the days off from Mr. Madura; failing to complete production planner entries for four days, failing to check red jacket reports for three days, failing to front face cooler and store, and failing to enter two-day-old invoices before leaving the store on December 15, 2005. Although in

---

[3]The undisputed evidence establishes that Mr. Madura terminated Jenny Smith, another store manager, for similar conduct/misconduct. Although defendant alleges in its proposed facts that Ms. Smith is not German, there is no evidence in the record of this fact. Mr. Madura's affidavit fails to address Ms. Smith's national origin and defendant cites to no other evidence to support this allegation.

28

plaintiff's brief she states that she "refutes and denies" the
allegations that she left the store early without notifying her
supervisor or that she failed to complete her duties as manager,
she admitted that she left her shifts early, that her store was
left without two employees, and that she was absent on the days
in November which led to a three-day suspension. Her
explanations are that she did have permission from Mr. Madura to
leave early whenever she was in pain, that she did not know there
was only one employee at her store, and she called to report her
absences on the wrong phone number.

Plaintiff's explanations for these alleged deficiencies are
irrelevant. The fact remains that Casey's has articulated a non-
discriminatory reason for discharging plaintiff, i.e., that she
did not get proper permission to leave her shifts early, that she
did not ensure that her store was covered by at least two
employees, and that she did not report her absences properly.
Plaintiff has been unable to point to any evidence that would
establish that these reasons are a pretext for unlawful
discrimination. As mentioned above, it is not for the court to
determine whether these reasons are good reasons. Burch v. Coca-
Cola Co., 119 F.3d 305, 320 n.13 (5th Cir. 1997), cert. denied,
522 U.S. 1084 (1998); Walker v. AT&T Technologies, 995 F.2d 846,
846 (8th Cir. 1993) (an employer has the right to make business
decisions concerning hiring, termination, work assignments,

promotion and employee discipline for good reason, bad reason, or no reason at all, absent intentional discrimination or retaliation for protected activity); Whitfield v. St. Louis Board of Education, 863 F. Supp. 1008, 1012 (E.D. Mo. 1994).

Plaintiff claims that it is "suspicious" that Mr. Madura wrote up plaintiff for leaving work early shortly after he told her she could leave up to an hour early without notifying him. However, the written reprimand states that plaintiff left her shift two hours early, and plaintiff testified that Mr. Madura told her she could leave 30 minutes to one hour early. Plaintiff also stated that she mentioned this when she received her written reprimand but does not remember what his response was. In addition, she failed to write this explanation in the "employee comments" section of the written reprimand. In any event, the undisputed evidence is that plaintiff had permission to leave 30 minutes to one hour early without notifying Mr. Madura, and that she was given a written reprimand for leaving her shift two hours early.

Plaintiff also points out that she received a bonus check shortly before she was terminated, and that this "strongly supports plaintiff's claim that she was 'actually perform[ing] her job at a level that [met] her employer's legitimate expectations.'" However, plaintiff has offered no evidence that the bonus was performance based. In fact, plaintiff testified in

30

her deposition that she believed the bonuses were based on how much the store sold.

Plaintiff argues that she has proven that the legitimate non-discriminatory reasons offered by defendant for plaintiff's termination are pretextual, and then cites nothing but Helena Snow's hearsay testimony. Additionally she argues again that Mr. Madura asked Ms. Snow to compile a list of plaintiff's absences, that Ms. Snow lied in that report (or at least used guesses rather than facts to compile the list), and that Ms. Snow had a motivation to lie because she wanted plaintiff's job. Once again, this does not amount to national origin discrimination. It may not have been good business practice for Mr. Madura to rely on such an attendance list, but it has no bearing on national origin, especially when all of the parties involved are the same national origin.

Based on all of the above, I find that plaintiff has failed to establish a prima facie case of national origin discrimination and, even if she had established a prima facie case, she is unable to establish that the legitimate, non-discriminatory reasons for her discharge are pretextual and that the real reason for her discharge was her national origin.

## VI. CONCLUSION

Based on the above findings of undisputed facts and the law as discussed in sections IV. and V., I find that there is no

31

genuine issue of material fact and that defendant is entitled to summary judgment. Specifically, I make the following conclusions of law:

1. Plaintiff has established no direct evidence of discrimination.

2. Plaintiff cannot establish a prima facie case of national origin discrimination because she cannot prove that she was replaced with someone outside the protected class or that similarly-situated employees outside the protected class were treated more favorably than she was.

3. Defendant has articulated a legitimate, non-discriminatory reason for discharging plaintiff, and plaintiff is unable to establish that the articulated reason is false or is a pretext for intentional discrimination.

Although plaintiff's termination may very well have been unfair, the undisputed evidence in this case establishes that it was not the result of unlawful discrimination.

Therefore, it is

ORDERED that defendant's motion for summary judgment is granted.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
January 30, 2008

32